1  LAWRENCE G. BROWN
   Acting United States Attorney
2  BENJAMIN B. WAGNER
   SEAN C. FLYNN
3  Assistant U.S. Attorneys
   501 "I" Street, Suite 10-100
4  Sacramento, California 95814
   Telephone: (916) 554-2700
5



FILED

MAY - 5 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

6

7
                IN THE UNITED STATES DISTRICT COURT
8
              FOR THE EASTERN DISTRICT OF CALIFORNIA
9

10
   UNITED STATES OF AMERICA,        )
11                                   )
                   Plaintiff,        )    No. CR 09-145 LKK
12                                   )
        v.                           )
'13                                  )    PLEA AGREEMENT
   ROBERT C. TURNER, Jr.             )
14                                   )
                   Defendant.        )
15 _____    )

16

17                               I.

18                          INTRODUCTION

19      **A.  Scope of Agreement**:  The Information to be filed in this

20 case charges the defendant, Robert C. Turner, Jr. ("Turner"), with

21 two counts of honest services mail fraud in violation of 18 U.S.C.

22 §§ 1341 and 1346.  This document contains the complete plea

23 agreement between the United States Attorney's Office for the

24 Eastern District of California (the "government") and the defendant

25 regarding this case.  This plea agreement is limited to the United

26 States Attorney's Office for the Eastern District of California and

27 cannot bind any other federal, state, or local prosecuting,

28 administrative, or regulatory authorities.

                                1

1    **B.   Court Not a Party:**  The Court is not a party to this plea
2    agreement.   Sentencing is a matter solely within the discretion of
3    the Court, the Court is under no obligation to accept any
4    recommendations made by the government, and the Court may in its
5    discretion impose any sentence it deems appropriate up to and
6    including the statutory maximum stated in this plea agreement.   If
7    the Court should impose any sentence up to the maximum established
8    by the statute, the defendant cannot, for that reason alone,
9    withdraw his guilty plea, and he will remain bound to fulfill all of
10   the obligations under this plea agreement.   The defendant
11   understands that neither the prosecutor, defense counsel, nor the
12   Court can make a binding prediction or promise regarding the
13   sentence he will receive.

14                              **II.**

15                    **DEFENDANT'S OBLIGATIONS**

16   **A.   Waiver of Indictment and Venue:**  The defendant will waive
17   indictment by grand jury, waive venue in the District of New Jersey,
18   and agree to proceed in the Eastern District of California.   He
19   consents to the filing of a two-count Information, substantially in
20   the form attached hereto as Exhibit B, charging him with honest
21   services mail fraud (2 counts) in violation of 18 U.S.C. §§ 1341 and
22   1346.

23   **B.   Guilty Plea:**  The defendant will plead guilty to the
24   Information charging him with two counts of honest services mail
25   fraud.   The defendant agrees that he is in fact guilty of those
26   charges and that the facts set forth in the Factual Basis attached
27   hereto as Exhibit A are true and accurate.

28   **C.   Restitution:**  The Mandatory Victim Restitution Act requires

                              2

the Court to order restitution to the victims of certain offenses. Accordingly, the defendant agrees to pay full restitution to victim B&G Foods, Inc. of, Parsippany, New Jersey, in the amount of $14,698.00. In addition, pursuant to Title 18, United States Code, Section 3663(a)(3), the defendant also agrees to pay restitution to his former employer, Nabisco, Inc., for a related violation of the duty of honest services, in the amount of $50,500.

The defendant shall pay restitution as directed by the United States Probation Office. The defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**D.  Special Assessment:**  The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering, immediately before the sentencing hearing, a check or money order to the U.S. Probation Office that is made payable to the United States District Court.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A.  Incarceration Range:**  The government will recommend that the defendant be sentenced to a period of incarceration no greater than the mid-point of the applicable guideline range for his offense as determined by the United States Probation Office.

**B.  Acceptance of Responsibility:**  If the United States Probation Office determines that a three-level reduction in defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with

3

1 and assists the probation officer in the preparation of the pre-
2 sentence report, is truthful and candid with the probation officer
3 and the Court, and does not otherwise engage in conduct that
4 constitutes obstruction of justice within the meaning of U.S.S.G. §
5 3C1.1, either in the preparation of the pre-sentence report or
6 during the sentencing proceeding.

IV.

## ELEMENTS OF THE OFFENSE

9     With respect to Counts One and Two of the Information to be
10 filed in this matter, which charge the defendant with honest
11 services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, at
12 trial the government would have to prove beyond a reasonable doubt
13 the following elements:

14     First, that the defendant knowingly made up a material scheme
15 or plan to deprive his employer B&G Foods, Inc. of its intangible
16 right to the defendant's honest services;

17     Second, the defendant acted with the intent to deprive B&G
18 Foods, Inc. of its intangible right to the defendant's honest
19 services; and

20     Third, the defendant used, or caused to someone to use, the
21 mails to carry out or to attempt to carry out the scheme or plan.

V.

## MAXIMUM SENTENCE

24 **A.  Maximum Penalty:**  With respect to Counts One and Two of the
25 Information to be filed in this matter charging violations of 18
26 U.S.C. §§ 1341 and 1346, the maximum sentence that the Court can
27 impose is twenty years of incarceration, a fine of $250,000, a
28 three-year period of supervised release, and a special assessment of

4

1    $100 on each count.

2        **B.   Violations of Supervised Release:**   The defendant

3    understands that if he violates a condition of supervised release at

4    any time during the term of supervised release, the Court may revoke

5    the term of supervised release and require the defendant to serve up

6    to two additional years of imprisonment.

7                                    **VI.**

8                        **SENTENCING DETERMINATION**

9        **A.   Statutory Authority:**   The defendant understands that the

10   Court must consult the Federal Sentencing Guidelines (as promulgated

11   by the Sentencing Commission pursuant to the Sentencing Reform Act

12   of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as

13   modified by United States v. Booker and United States v. Fanfan,

14   543 U.S. 220, 125 S.Ct. 738 (2005)) and must take them into account

15   when determining a final sentence.   The defendant understands that

16   the Court will determine a non-binding and advisory guideline

17   sentencing range for this case pursuant to the Sentencing

18   Guidelines.   The defendant further understands that the Court will

19   consider whether there is a basis for departure from the guideline

20   sentencing range (either above or below the guideline sentencing

21   range) because there exists an aggravating or mitigating

22   circumstance of a kind, or to a degree, not adequately taken into

23   consideration by the Sentencing Commission in formulating the

24   Guidelines.   The defendant further understands that the Court, after

25   consultation and consideration of the Sentencing Guidelines, must

26   impose a sentence that is reasonable in light of the factors set

27   forth in 18 U.S.C. § 3553(a).

28       **B.   Stipulations Affecting Guidelines Calculations:**   The

                                      5

1 government and the defendant agree that there is no material dispute
2 as to the following sentencing guidelines variables and therefore
3 stipulate and agree to the following:

4 **1. Base Offense Level:** The defendant's base offense
5 level is eight pursuant to U.S.S.G. § 2B4.1.

6 **2. Specific Offense Characteristics:** Pursuant to U.S.S.G.
7 §§ 2B4.1(b)(1) and 2B1.1(b)(1)(D), the parties agree that at an
8 evidentiary hearing the government is currently in a position to
9 prove that the amount of loss attributable to the honest services
10 mail fraud committed by the defendant, and relevant conduct, is
11 greater than $30,000, but less than $70,000. Consequently, the base
12 offense level is increased by six.

13 **3. Abuse of Trust:** The parties stipulate and agree that
14 in committing the conduct alleged in Counts One and Two of the
15 Information to be filed in this matter defendant abused a position
16 of public or private trust. Consequently, there is a two level
17 enhancement pursuant to U.S.S.G. § 3B1.3.

18 **4. Acceptance of Responsibility:** See paragraph III.B
19 above.

20 **5. Total Offense Level:** Pursuant to the foregoing
21 stipulations, and assuming the defendant accepts responsibility for
22 his conduct under U.S.S.G. § 3E1.1, the defendant's total adjusted
23 offense level is thirteen.

24 **6. Criminal History:** The parties agree that the
25 defendant's criminal history is to be determined by United States
26 Probation.

27 **7. Departures or Other Enhancements or Reductions:** The
28 parties stipulate and agree that they will not seek or argue in

6

support of any other specific offense characteristics, Chapter Three adjustments or cross-references, other than those contemplated in the foregoing stipulations. The defendant stipulates and agrees not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), that would result in the defendant's offense level falling within Zone A of the sentencing guidelines table. Any attempt by the defendant to seek a downward departure or variance which would result in his offense level falling within Zone A of the sentencing guidelines table will void this plea agreement and the government shall not be bound by its promise to recommend a sentence no higher than the mid-point of the applicable guideline range.

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives him a right to appeal his conviction and sentence. He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as his sentence

7

1 is no longer than the top of the Sentencing Guidelines range

2 determined by the Court consistent with the stipulations set forth

3 above about the Sentencing Guidelines variables.

4 Regardless of the sentence he receives, the defendant also

5 gives up any right he may have to bring a post-appeal attack on his

6 conviction or his sentence. He specifically agrees not to file a

7 motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or

8 sentence.

9 If the defendant ever attempts to vacate his plea, dismiss the

10 underlying charges, or reduce or set aside his sentence on any of

11 the counts to which he is pleading guilty, the government shall have

12 the right (1) to prosecute the defendant on any of the counts to

13 which he pleaded guilty; (2) to reinstate any counts that may be

14 dismissed pursuant to this plea agreement; and (3) to file any new

15 charges that would otherwise be barred by this plea agreement. The

16 decision to pursue any or all of these options is solely in the

17 discretion of the United States Attorney's Office. By signing this

18 plea agreement, the defendant agrees to waive any objections,

19 motions, and defenses he might have to the government's decision.

20 In particular, he agrees not to raise any objections based on the

21 passage of time with respect to such counts including, but not

22 limited to, any statutes of limitation or any objections based on

23 the Speedy Trial Act or the Speedy Trial Clause of the Sixth

24 Amendment.

25 **C. Waiver of Attorneys' Fees and Costs:** The defendant agrees

26 to waive all rights under the "Hyde Amendment," Section 617, P.L.

27 105-119 (Nov. 26, 1997), to recover attorneys' fees or other

28 litigation expenses in connection with the investigation and

prosecution of all charges in the above-captioned matter and of any related allegations.

## VIII.

### ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.

### APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: May 5, 2009

_____
JOHN AZZARELLO
Attorney for Defendant

**B. Defendant:** I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in

1 | this plea agreement.  In addition, no one has threatened or forced
2 | me in any way to enter into this plea agreement.  Finally, I am
3 | satisfied with the representation of my attorney in this case.
4 |
5 | DATED:  _May 5, 2009_                              ROBERT C. TURNER, Jr., Defendant
6 |
7 |
8 |         C.  **Attorney for United States:**  I accept and agree to this
9 | plea agreement on behalf of the government.
10 |
11 | DATED:  _May 5, 2009_                    LAWRENCE G. BROWN
                                             Acting United States Attorney
12 |
13 |
14 |                             By: _____
                                    BENJAMIN B. WAGNER
15 |                                 SEAN C. FLYNN
                                    Assistant U.S. Attorneys

10

**EXHIBIT "A"**
**Factual Basis for Plea**

At trial, the government would prove the following facts beyond a reasonable doubt:

From at least September 2004 until April 2008, defendant Robert Turner ("Turner") served as a corporate purchasing manager for B&G Foods, Inc. ("B&G"), a multinational manufacturer, seller and distributor of various food products with a principal place of business and headquarters in Parsippany, New Jersey. From 2007 until April 2008, Turner was Director of Purchasing for B&G. In that capacity, Turner was vested with authority to negotiate and enter into contracts, with the approval of his employer, for the purchase of processed tomato products and other food products from various processors. In the normal course, B&G and Turner received bids for the sale of processed tomato products and other food products from processors to B&G by way of what was intended to be a competitive bidding process. In performing these functions, Turner owed B&G a duty of honest services.

One company which routinely sold processed tomato products and other food products to B&G was SK Foods, L.P., a limited partnership with principal places of business in Monterey, California, and in Williams and Lemoore, California, in the Eastern District of California. SK Foods, L.P. and its related corporate entities ("SK Foods") is a grower and processor of tomato products and other food products, for sale to food product manufacturers, food service distributors and marketers, and retail outlets. In negotiating and entering into contracts between B&G and SK Foods, Turner routinely dealt with Randall Rahal, a supervisor and Director of SK Foods, who also served as an SK Foods sales broker through his New Jersey-based food service company Intramark USA, Inc. ("Intramark").

As part of a scheme to defraud B&G of its right to Turner's honest services, between September 2004 and April 2008 Turner accepted approximately $14,698 in personal bribe payments from Rahal on behalf of SK Foods. In return for the bribes, Turner agreed to, and did, ensure that B&G purchased processed tomato products and other food products from SK Foods rather than from certain of SK Foods' competitors. In addition, in return for the bribe payments, Turner secured contracts between B&G and SK Foods for the sale of certain food products at inflated prices.

Prior to being employed by B&G, Turner served in a purchasing manager capacity for Nabisco, Inc., a manufacturer, distributor and seller of cookies, snacks and other foods products, also with a principal place of business in Parsippany, New Jersey. While employed by Nabisco, Turner accepted approximately $50,500 in personal bribe payments from Rahal and SK Foods in the same manner as he did while employed by B&G.

One example of how Turner breached his duty of honest services to B&G occurred in the spring and summer of 2007. In May 2007, SK Foods and B&G entered into a cost-plus contract whereby SK Foods

1   agreed to sell B&G 13,000,000 pounds of chile and jalapeno peppers
    at a price of $0.22 per pound.  Subsequent to entering into the
2   agreement, and in exchange for bribe payments from Rahal, Turner
    agreed to increase the price per pound that B&G would pay SK Foods
3   under the contract by $.01 per pound.  In exchange for his efforts
    in helping secure the pepper contract between SK Foods and B&G, as
4   well as its inflated price, Rahal promised Turner a personal bribe
    payment in the approximate amount of $65,000 – equating to $.005 per
5   pound on the entire contract.  On July 12, 2007, in an intercepted
    wire communication, Rahal confirmed the amount of the bribe payment
6   with Turner.

7       On or about December 12, 2007, Rahal directed a check in the
    amount of $9,689.80 from Intramark's Sun National Bank account
8   number XXXXXX5624 to Turner's wife, via United States mail, in
    partial satisfaction of the agreed to bribe payment.  Between
9   September 2004 and April 2008, Turner received at least $14,698.80
    in bribe payments from Rahal.  One such additional bribe payment
10  occurred on or about July 11, 2007.  On that date, Rahal directed
    checks in the amount of $2,000 from Intramark's Sun National Bank
11  account number XXXXXX5624 to Turner's wife, via United States mail.

12      Turner, Rahal and SK Foods' actions were in direct
    contravention of the conflict of interest policies set forth in B&G
13  Foods, Inc.'s Code of Business Conduct and Ethics, and were intended
    to, and did deprive B&G of its right to Turner's honest services.
14  Such conduct violated 18 U.S.C. §§ 1341 and 1346, and N.J. STAT. ANN.
    § 2C:21-10.

15

16

17

18

19

20

21

22

23

24

25

26

27

28